IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELAINE BARLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FOX CHASE CANCER CENTER | : | NO. 13-6269 |

MEMORANDUM

Dalzell, J.                                                                                    October 23, 2014

After prevailing at summary judgment against a probationary employee's discrimination claim, Fox Chase Cancer Center ("Fox Chase") seeks $125,907.05 in attorney fees and $7,826.54 in costs pursuant to Fed. R. Civ. P. 54(d)(2) and 42 U.S.C. §12205.  Fox Chase also moves for sanctions against plaintiff's counsel under Fed. R. Civ. P. 11 for fees incurred opposing plaintiff's summary judgment motion.  In response, Elaine Barley's counsel, Margolis Edelstein, asks us to sanction Fox Chase's counsel, Littler Mendelson, pursuant to 28 U.S.C. §1927 for filing the two vexatious motions.

For the reasons detailed below, we will deny Fox Chase's motions and grant Barley's motion.

I.      **Factual and Procedural Background**

On May 23, 2012, Fox Chase terminated Barley from her position as a clerk in the histology lab before the conclusion of her ninety-day orientation period.  See Barley v. Fox Chase Cancer Center, -- F.Supp. 2d --, 2014 WL 4375486 at *1 (E.D.Pa. Sept. 3, 2014).  On October 23, 2013, Barley sued Fox Chase for discrimination under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., alleging that it had failed to accommodate her asthma and disregarded her physician's recommendation that she wear a respiratory mask to prevent

chemical inhalation in the laboratory.  After extensive discovery, the parties filed cross-motions

for summary judgment and responses in opposition thereto in July of 2014, followed by replies

in August of 2014.  On September 3, 2014, we denied Barley's motion for summary judgment

and granted Fox Chase's motion, finding that Barley was judicially estopped from pursuing her

ADA claim for discrimination and failure to accommodate because those claims were

inconsistent with her position in her Social Security Administration ("SSA") proceedings for

disability benefits.  Barley, 2014 WL 4375486 at *15.  We also held that Barley could not

establish a prima facie claim of retaliation because she could not show the requisite causal link as

a matter of law based on temporal proximity between her protected activity and her termination,

or a pattern of antagonism or on the record as a whole.  Id. at *17.

Nineteen days after our decision, Fox Chase filed a 126-page motion for attorney's fees

that included a June 12, 2014 letter to Barley's counsel, a Declaration from a Littler Mendelson

attorney in support of the application and 105 pages of Littler Mendelson invoices in which

every line describing the legal services rendered was redacted.[1]  That same day, Fox Chase also

filed a motion for sanctions under Rule 11, based both on its counsel's June 12, 2014 letter

advising Barley's counsel that she had taken a position inconsistent with the present litigation in

her SSA hearing and on its second deposition of Barley on June 25, 2014.  In support of its

motion, Fox Chase asserted, inter alia, that it "need not comply with all the procedural

requirements" of Rule 11 as doing so "would be impractical."  Mot. for sanctions under Rule 11

at 7.  Fox Chase also included the June 12, 2014 letter and seven pages of billing statements from

---

[1] To be precise, every entry on each of the fifty-eight pages in which Littler Mendelson
accounted for its time was presented to us like this:

| Date | Atty | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 11/07/13 | KSA | Redacted | .20 | 50.00 |

which, again, every description of services rendered had been redacted.[2]

On October 15, 2014, Barley filed her responses in opposition to both motions contending that Fox Chase is not entitled to attorney's fees and asking us to sanction Littler Mendelson for procedural deficiencies and for unreasonably and vexatiously multiplying the proceedings.  Resp. in Opp. to Mot. for sanctions at unnumbered pg. 11.

## II.  __Legal Standard__

### A.  Counsel Fees Awards: Burdens and Timing

The ADA permits the award of a "reasonable attorney's fee, including litigation expenses, and costs", in the discretion of the court, to a "prevailing party."  42 U.S.C. §12205.  In Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), the Supreme Court held that a court may award fees to a prevailing defendant only when the plaintiff's action was frivolous, unreasonable or without foundation, even if not brought in subjective bad faith.  Id. at 421.  Fee shifting under this standard is to be sparingly exercised.  Id.  Notably, the Court cautioned that

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

Id. at 421-22.

"Frivolous, unreasonable, or without foundation in this context implies groundless rather than simply that the plaintiff has ultimately lost h[er] case."  EEOC v. L.B. Foster Co., 123 F.3d

---

[2] In a footnote, Fox Chase asserts it spent $12,101.30 researching, writing and filing its brief in opposition to Barley's motion for summary judgment and related filings and offered that it "will furnish unredacted copies" of its invoices "to the Court upon request."  Notably, this proffer was not extended to Barley.  Mot. for Sanctions under Rule 11 at 8, n.4.

746, 751 (3d Cir. 1997) (internal alterations and ellipses omitted).  As our Court of Appeals observed in L.B. Foster, in cases where "frivolity" has been sustained, "the plaintiff[] did not introduce any evidence to support [the] claims"; where there was "some basis" for the losing plaintiff's claim, the district court erred in awarding fees to the prevailing defendant.  Id. at 751-52.  The Court went on to hold that a court determining whether to award counsel fees to a defendant should consider several factors, including " '(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'"  Id. at 751 (quoting with approval Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1190 (11th Cir. 1985)).  We may also consider whether the issue was one of first impression and whether the controversy was based sufficiently on a threat of genuine injury to the plaintiff.  Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 158 (3d Cir. 2001).  Our Court of Appeals cautioned that these guideposts are "not hard and fast rules." L.B. Foster, 123 F.3d at 751.

As the Supreme Court long ago held, "[t]he most useful starting point" for a fee calculation is the hours "reasonably expended on the litigation multiplied by a reasonable hourly rate" -- often called the lodestar calculation.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Hours not properly billed to one's client are not to be billed to one's adversary pursuant to statutory authority.  Id. at 434.  Thereafter, once a district court determines that a fee award is warranted, our Circuit's well-established burden-shifting framework requires the moving party to show the reasonableness of fees and costs requested under the relevant statute by providing evidence to support the hours worked and rates claimed.  Then, the opposing party may challenge the reasonableness of the amount requested through affidavits and other evidence.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); see also Smith v. Phila. Housing

Auth., 107 F.3d 223, 225 (3d Cir. 1997) ("A district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record.") (internal citation omitted).  The district court has discretion to make adjustments in light of results obtained; for quality of representation; and to take account of the need to attract competent counsel.  Rode, 892 F.2d at 1183-84.

As to costs, a district court reviews a bill of costs de novo.  In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 461 (3d Cir. 2000).

A motion for attorney's fees pursuant to Rule 54 must "be filed no later than [fourteen] days after the entry of judgment" unless a statute or court order provides otherwise.  Fed. R. Civ. P. 54(d)(2)(B).[3]  The Advisory Committee Notes to the 1993 Amendments explain at length Congress's rationale for imposing this rule:  It provides notice to the nonmovant before the time for filing an appeal expires and affords the court an opportunity to resolve matters when services performed are freshly in mind.   "What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate)."  Fed. R. Civ. P. 54 Advisory Committee's Note (1993 Amendments).

B.    Sanctions

Rule 11 provides that we may sanction an attorney or party for filing documents for an improper purpose, making frivolous arguments, or making allegations that lack evidentiary support.  See Fed. R. Civ. P. 11(b) and (c).  Our Court of Appeals cautions that Rule 11 sanctions are warranted "only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous."  Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d

---

[3] Unlike other Districts within the Third Circuit, this District has no Local Rule extending the deadline for filing such petitions.

191, 194 (3d Cir. 1988) (internal citations omitted).  A district court must look objectively as to whether the imposition of sanctions would be reasonable under the circumstances.  Id.  As a preliminary matter, we must determine whether the movant complied with the "safe harbor" provision of Rule 11(c)(2), that is, the motion

> must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).  If the movant fails to provide the twenty-one day grace period, "the motion must be denied [because the] purpose of the safe harbor is to give parties the opportunity to correct their errors."  In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 99 (3d Cir. 2008).

Given the "safe harbor" provisions, "a party cannot delay serving its Rule 11 motion until conclusion of the case."  Fed. R. Civ. P. 11 Advisory Committee's Note (1993 Amendments).

Section 1927 provides sanctions against any attorney

> who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Our Court of Appeals explained that "the principal purpose of imposing sanctions under [Section] 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings.' "  Zuk v. Eastern Pennsylvania Psychiatric Institute, 103 F.3d 294, 297 (3d Cir. 1996) (quoting Beatrice Foods v. New England Printing, 899 F.2d 1171, 1177 (Fed. Cir. 1990)).  To impose sanctions, we must find that counsel has (1) multiplied the proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) did so in bad faith or by intentional misconduct.  In re Prudential Ins. Co. Am. Sales Practice

Litig. Agent Actions, 278 F.3d 175, 188 (3d Cir. 2002).   As our Court of Appeals has explained, counsel acts in bad faith when "the claims advanced were meritless, . . . counsel knew or should have known this, and . . . the motive for filing the suit was for an improper purpose such as harassment."  Id.

It is well-established that we retain jurisdiction after the entry of final judgment and the filing of a notice of appeal to adjudicate collateral matters such as attorneys' fees, costs and sanctions.  In re Bath and Kitchen Fixtures Antitrust Litig., 535 F.3d 161, 166 n. 8 (3d Cir. 2008).

## III.  Discussion

### A.   Fox Chase's Motion for Attorney's Fees

It is undisputed that Fox Chase was the prevailing party at summary judgment.  It rests its argument in support of its motion for $125,907.05 in attorney's fees and $7,826.54 in costs on its contention that Barley's claims were frivolous.  Mem. of Law at 4.  Fox Chase points out that we held that Barley's "conclusory statements. . . are insufficient to create a genuine issue of material fact" with respect to her discrimination claim and, as to her claim for retaliation, that the facts in record were not "unusually" suggestive of a retaliatory motive.  Id. (quoting Barley, 2014 WL 4375486 at *15 and *16).  Further, Fox Chase's counsel at Littler Mendelson, Kate S. Arduini, informed Barley's counsel in a June 12, 2014 letter that Barley was judicially estopped from her disability claim, as we ultimately held at summary judgment, but "Ms. Barley refused to withdraw her claims."  Id. at 5.  Fox Chase also states that it "never made a settlement offer to Ms. Barley in this case" and offers the Declaration of Littler shareholder Richard R. Harris, Esq. in support.  Id.  Finally, Fox Chase observes that we dismissed this litigation prior to trial.  Id.

As evidence for its lodestar calculation, Fox Chase provides the hourly rate of Littler

attorneys Harris ($306.00) and Arduini ($250.00) and paralegal Jennifer Mayer ($105.00), supported by a late-filed affidavit from a partner in another Philadelphia firm.  Id. at 7.  As to the hours worked, Fox Chase states its request "is supported by the detailed invoices of the fees actually billed", id.  But Fox Chase submitted totally redacted time entries and offered to furnish unredacted copies "to the Court upon request", but not to Barley.   Id. at n. 2.  These supposedly reasonable hours multiplied by Littler Mendelson's putative reasonable rates, Fox Chase avers, total $125,907.05, which it describes without evident embarrassment as a "presumptively reasonable" amount "necessary" to Fox Chase's defense.  Id. at 8.

As to the costs incurred, Fox Chase states that it seeks $7,826.54 pursuant to Rule 54(d) -- comprising $1,203.00 for Barley's video deposition, $5,658.93 in other deposition costs, and $964.61 in duplication costs.  Id.; see also Bill of Costs, Sept. 17, 2014.

Barley argues that Fox Chase's motion is untimely under Rule 54 because it was filed nineteen days after we entered judgment in defendant's favor and Fox Chase can show no "excusable neglect" for its five-day untimeliness.[4]  Resp. at unnumbered pg. 4.  She also contends that her claims were not frivolous, as (1) Fox Chase deposed Barley a second time on June 25, 2014 (after sending its letter); (2) it failed to argue for sanctions or attorney's fees thereafter, either in another letter or its motion for summary judgment; and (3) the issue whether

---

[4] Rule 54 states, "Unless a statute or a court order provides otherwise, the motion must be filed no later than 14 days after the entry of judgment."  Fed. R. Civ. P. 54(d)(2)(B)(i).  But the Advisory Committee notes to the 1993 Amendments explain that "[i]f an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved."  As Barley filed a notice of appeal on October 1, 2014, before responding to Fox Chase's fee motion, we therefore do not agree with Barley that Rule 54 provides grounds for denying Fox Chase's motion and decline to dismiss Fox Chase's motion for untimeliness.

Barley was judicially estopped is a "complex legal inquiry involving mixed questions of law and fact" that was undecided until our September 3, 2014 Opinion. Id. at 6-7. Barley also contradicts Fox Chase's assertion that it made no settlement offer with a Declaration from associate Michael R. Miller attesting to Fox Chase's $10,000.00 settlement offer following the March 4, 2014 preliminary settlement conference in our Chambers. Id. at 9.

Barley argues that Fox Chase's redacted submission of every line item and its omission of an engagement letter setting forth agreed-upon rates or a litigation budget renders its motion impossible to evaluate under the lodestar formula. Id. at 9-10.

Finally, Barley contends that she is indigent and dependent on disability benefits, as she made clear to defendants in the course of this litigation. Id. at 11. She urges us to be guided by our Circuit's view that the public interest in encouraging particular suits, the conduct of the parties and economic considerations may weigh in our judgment. Id.

We turn first to Fox Chase's assertion that Barley's claims were frivolous because (1) she offered only conclusory statements to support her claims, (2) Fox Chase warned her that she was judicially estopped, and (3) Fox Chase never offered to settle before we dismissed the matter pretrial. As to Fox Chase's first argument, we are mindful of the Supreme Court's caution not to conclude that "because a plaintiff did not ultimately prevail, [her] action must have been unreasonable or without foundation[, as this] kind of hindsight logic could discourage all but the most airtight claims." Christiansburg, 434 U.S. at 422. We do not find Barley's failure to support her claims a sufficient ground to find her lawsuit frivolous.

As to Fox Chase's judicial estoppel argument: As we detailed in our September 3, 2014 Opinion, Barley sued Fox Chase for discrimination under the ADA while at the same time seeking Social Security disability benefits claiming to be totally disabled. Barley, 2014 WL

4375486 at *8-*9.  Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from taking inconsistent positions in the same or other proceedings.  Id. at *8.  The relevant inquiry here is not the facial inconsistency of Barley's position in her suit, as opposed to what she took with the SSA, but whether Barley could "proffer a sufficient explanation" for the inconsistency since the SSA sometimes grants disability benefits to individuals who not only can work but are working.  Id. at *9 (quoting Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 805-06 (1999)).  We found that Barley failed to proffer a sufficient explanation because, like the litigant in Motley v. New Jersey State Police, 196 F.3d 160 (3d Cir. 1999), she could not show in her application for SSA disability benefits that she could perform the essential functions of her job with or without accommodation.  Id. at *14.  And, as with the plaintiff in Detz v. Greiner Industries, Inc., 346 F.3d 109 (3d Cir. 2003), some of the aspects of Barley's claim we found telling were her pursuit of disability benefits after an initial denial and contradictory sworn testimony before the SSA and in this matter about her physical capability to perform her job.  Id. at *15.

Because we sustained Fox Chase's contention that Barley was judicially estopped (and as it warned her counsel in the June 12, 2014 letter), Fox Chase argues that we should find her claims were groundless under this Circuit's test in L.B. Foster.  We cannot agree.  Judicial estoppel is properly classified as an affirmative defense, see Fed. R. Civ. P. 8(c)(1); see also 18B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 4477 (2d ed. 2014), and, like all affirmative defenses, it is the defendant's burden to properly plead and prove. Further, as judicial estoppel, like other affirmative defenses, may be waived by a defendant if it is not properly raised, "it is not necessarily unreasonable for a plaintiff to file a case even with the understanding that an affirmative defense likely applies."  Banuelos v. Waste Connections,

Inc., 2013 WL 5147507 at *6 (E.D.Cal. Sept. 12, 2013).  We agree with Banuelos that "[g]iven the nature of affirmative defenses, if a plaintiff does not receive forewarning that an affirmative defense will be raised, then there is no clear basis to sanction a party for merely filing a lawsuit that is . . . later defeated by[] an affirmative defense," id., especially when that warning -- absent from Fox Chase's answer to Barley's complaint but raised here -- comes at the eleventh hour of the litigation.

Turning to the L.B. Foster factors, we find that fees are not warranted, as the burden of proving judicial estoppel was defendant's and we resolved the matter before trial.  See LaGatta v. Pennsylvania Cyber Charter School, 2012 WL 393423 (W.D.Pa. Feb. 6, 2012).  This matter presented no case of first impression but, according to Barley's testimony, involved a genuine threat of injury to her by exacerbating her asthma.  Further, as our Court of Appeals observed in L.B. Foster -- where there was "some basis" for the losing plaintiff's claim -- the district court erred in awarding fees to the prevailing defendant.  L.B. Foster, 123 F.3d at 752.  We find that Barley had "some basis" for making a claim, as she offered in her own testimony, and will not sanction her by imposing Fox Chase's attorney's fees on her.  We find that the factors do not plainly favor a fee award and therefore exercise our discretion to deny Fox Chase's motion.

We are especially distressed by counsels' contradictory sworn Declarations concerning the existence of a settlement offer -- a factor under L.B. Foster.  In his September 19, 2014 Declaration, Littler Mendelson's Richard R. Harris, Esq. unequivocally stated, "Fox Chase has never authorized any settlement offer or engaged in any settlement negotiation during this litigation."  Mot. for fees, Ex. B at ¶ 13.  In response, on October 14, 2014, Michael R. Miller, Esq. of Margolis Edelstein declared as follows:

> On March 4, 2014, I attended a settlement conference in [this]
> matter before Judge Stewart Dalzell.  Immediately following the

> conference, while within the waiting room of Judge Dalzell's Chambers, I became engaged in a conversation with Richard Harris, Esquire and Kate Arudini [sic], Esquire, attorneys for the . . .[d]efendant, about scheduling depositions. During this conversation, Mr. Harris interjected that he had a "check for $10,000 right here", gesturing to the inner pocket within his suit coat. I advised Mr. Harris that I would take this offer to my client, which was done and subsequently rejected. While I admit no significant "settlement negotiations" took place in this matter, [d]efendant, through Mr. Harris's statement, clearly made a settlement offer to [p]laintiff in this case.

Mem. of Law in Resp. to Mot. for Sanctions and Cross-Mot. for Sanctions Under 28 U.S.C. §1927, Ex. B ¶¶ 2-6.

Pennsylvania Rule of Professional Conduct 3.3, Candor to the Tribunal, provides in relevant part that a lawyer shall not knowingly:

> (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; . . . or
> (3) offer evidence that the lawyer knows to be false.

PA R. Prof. Con. 3.3(a). With that in mind, Richard R. Harris, counsel for Fox Chase at Littler Mendelson, and Michael R. Miller, counsel for Barley at Margolis Edelstein, shall explain themselves under oath to this Court at a hearing later this month.

Although we conclude that Barley's claims were not brought frivolously and therefore Fox Chase is not entitled to attorney's fees, we also find Fox Chase's redacted fee submission is insufficient to support any claim for attorney's fees. Contrary to Fox Chase's assertion that it spent the "presumptively reasonable" amount "necessary" to prevail, other legal professionals might reasonably question a $125,907.05 expenditure in a discrimination case brought by a probationary clerical employee. Be that as it may, Fox Chase gave us no choice but to deny its motion for fees which it actually asks us and Ms. Barley to take on faith.

Our Court of Appeals has repeatedly held that "[a] district court may not set attorneys'

fees based upon a generalized sense of what is customary or proper, but rather <u>must</u> rely upon the record."  <u>Dee v. Borough of Dunmore</u>, 548 F. App'x 58, 62 (3d Cir. 2013) (emphasis supplied). To do otherwise would be an abuse of discretion.  As our Court of Appeals explained in <u>Smith</u>, 107 F.3d at 225, Fox Chase bears the burden of producing sufficient evidence not only to make its case, but to give its adversary an opportunity to contest unwarranted fees and provide the Court a basis for its ruling.  <u>See</u> <u>Rode</u>, 892 F.2d at 1181.

Chief Justice Burger explained in his <u>Hensley</u> concurrence that "[i]t would be inconceivable that the prevailing party should not be required to establish at least as much to support a claim [under the relevant statute] as a lawyer would be required to show if his own client challenged the fees."  <u>Hensley</u>, 461 U.S. at 440.  A claim for legal fees presents a different situation from the "relationship of mutual trust" existing between a client and his attorney, which "does not require the kind of extensive documentation necessary" for a payment under a fee-shifting statute.  <u>Id.</u> at 441.  Where "no relationship of trust and confidence" exists between adversaries, "the party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed."  <u>Id.</u>

The longstanding rule in this Circuit has been equally clear.  When redaction is so pervasive that it makes it impossible to determine the nature of services performed, the movant has failed to meet its burden of adequately documenting the hours expended.  <u>See</u>, <u>e.g.</u>, <u>Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161, 167 (3d Cir. 1973).

Here, Littler Mendelson failed to provide any detail of the nature of services it provided for Fox Chase.  Indeed, the firm submitted page after blacked-out page as if guarding top-secret

information involving national security.  Not one description of services rendered escaped into the light.[5]  As a result, we have no evidence, let alone sufficient evidence, with which to make a fair evaluation of the time expended, nor can Barley contest any entry or hourly charge as <u>Rode</u> permits her to do, <u>Rode</u>, 892 F.2d at 1181.  That Fox Chase offers -- as an afterthought dropped into a footnote -- to supply the information later to the Court -- and not, it appears, to its adversary -- simply will not do.  As <u>Smith</u> held, the movant's burden is to make a <u>prima</u> <u>facie</u> case, 107 F.3d at 225.  That ship has sailed.

We turn at last to Littler Mendelson's motion for $7,826.54 in costs, which Barley contests because she is indigent.   Barley urges us to follow Judge Stengel in considering the ability of the parties to pay.  <u>See</u> <u>Blasi v. Pen Argyl Area School Dist.</u>, 2014 WL 4662477 at *4 (E.D.Pa. Sept. 19, 2014).  <u>But</u> <u>see</u> <u>Smith v. SEPTA</u>, 47 F.3d 97 (3d Cir. 1995).  We will thus grant Littler Mendelson's motion to the extent of costs expended taking depositions of the individuals material to Fox Chase's summary judgment motion, but we will deny those associated with the second Barley deposition, as it was Fox Chase's burden to prove its affirmative defense of judicial estoppel.  Littler Mendelson chose to videotape this deposition, in addition to transcribing it.  Having considered both versions, the video conferred no benefit to our disposition of Fox Chase's motion.

B.      <u>Fox Chase's Motion for Rule 11 Sanctions and Barley's Cross-Motion</u>

Fox Chase also seeks sanctions under Rule 11 in the form of attorney's fees expended opposing Barley's motion for summary judgment and drafting its own reply in support of its

---

[5] Regrettably, it is commonplace for judges to describe egregious behavior in fee disputes as chutzpah, often paraphrased as unmitigated gall.  <u>See</u>, <u>e.g.</u>, <u>Blakey v. Continental Airlines, Inc.</u>, 2 F.Supp.2d 598, 604 (D.N.J. 1998).  Littler Mendelson's 105-page, black-blocked submission constitutes a stunning addition to this dispiriting literature.

motion for summary judgment.  Mem. of Law in support of sanctions under Rule 11 at 1.  It contends that plaintiff was unreasonable in pursuing her claims after June 12, 2014, when Fox Chase's counsel wrote outlining the case law on judicial estoppel and requesting that Barley drop her claims.  Id. at 2.  On June 25, 2014, Fox Chase deposed Barley a second time to provide her with an opportunity to reconcile her claims in this action with her statements to the SSA in her disability benefit proceeding.  She was unable to do so.  Id. at 2-3.  In a fit of unaccustomed candor, Fox Chase concedes that Rule 11 obliged it to first serve Barley with the proposed motion and wait for twenty-one days so Barley might withdraw the offending filing, but states that "in the present case, compliance with this requirement would be impractical" after Barley filed her motion for summary judgment.  Id. at 7.  "Similarly, it would have been impossible for Fox Chase to comply with this requirement" after Barley's summary judgment filing or her opposition to Fox Chase's motion, because responses were due within twenty-one days.  Id.  As with its other motion, Fox Chase's fee submission is entirely redacted.

Barley contends this motion is untimely because it was filed after the entry of final judgment.  Resp. at unnumbered pg. 4.  Further, she avers, Fox Chase failed to comply with Rule 11's safe harbor requirement.  Id. at unnumbered pgs. 6-7.  She also argues that Rule 11 sanctions are available only in exceptional circumstances not present here and that the June 12, 2014 letter is insufficient notice of defendant's intent to seek sanctions.  Id. at 9-10.  Finally, Barley seeks sanctions under 28 U.S.C. § 1927 for Littler Mendelson's filing the bill of costs and the two motions for fees and sanctions.  Id. at 11-12.  Barley contends sanctions are also warranted for Littler Mendelson's mischaracterization of the settlement offer, their bill redaction, and the untimely Rule 11 motion aimed at harassing her and incurring additional costs.  Id. at 13-15.

We agree with Barley that Fox Chase is not entitled to sanctions under Rule 11.  Fox Chase offers no excuse or legal support for its failure to file any Rule 11 sanctions motion prior to Barley's summary judgment motion or in the three weeks before we issued our Opinion.  Nor could it find such support:  Rule 11's safe harbor is not optional but rather integral to the Rule's purpose of having parties self-correct without court intervention.  See Schaefer Salt, 542 F.3d at 99 ("the purpose of the safe harbor is to give parties the opportunity to correct their errors").  The Advisory Committee Notes to the 1993 amendment clarify that "[g]iven the 'safe harbor' provisions. . ., a party cannot delay serving its Rule 11 motion until conclusion of the case." Again, the period for a Rule 11 filing ended when we granted Fox Chase's summary judgment motion.  Fox Chase's motion is untimely and its failure to comply with the safe harbor cannot be excused.

Nor could Fox Chase's June 12, 2014 letter be fairly construed to constitute a Rule 11 motion.  Attorney Arduini wrote on Fox Chase's behalf "to request that your client immediately dismiss her claims in light of her statements to the Social Security Administration ("SSA")." She cited case law in support of Fox Chase's judicial estoppel argument and reviewed Barley's claims and SSA testimony.  Mot. for Sanctions, Ex. A.  Arduini concluded, "In light of the above, your client's claims are baseless.  We look forward to hearing from you after you review this letter and your client's SSA file."  Id.  Rule 11 is notable only by its absence.

Even had Fox Chase bared its Rule 11 teeth in the letter, many Circuit courts have found that sending an informal letter instead of serving a Rule 11 motion fails to comply with the Rule's obligations.  See Albibi v. Tiger Mach. Co., Ltd, 2014 WL 3548312 at *2 (D.N.J. July 17, 2014) (collecting cases).  The Eighth Circuit found insufficient an email threat to seek Rule 11 sanctions, Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1029-30 (8th Cir. 2003); the Fifth

16

Circuit required formal service of a Rule 11 motion, In re Pratt, 524 F.3d 580, 588 (5th Cir. 2008); and the Ninth Circuit reversed a district court's award of sanctions based on a belated motion because it failed to comply with the Rule 11 requirement for timely service, Barber v. Miller, 146 F.3d 707, 711 (9th Cir. 1998).

Further, even had we found Fox Chase compliant the exceptional circumstances Rule 11 requires are absent here. As our Court of Appeals teaches, "Litigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment. . . . Substantially more is required." Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987). Rule 11 sanctions may be imposed only when a lawyer signs a "written motion, and other paper" in violation of the Rule, not when an attorney, "after time for discovery, is unable to produce adequate evidence to withstand a motion for summary judgment." Teamsters Local Union No. 430 v. Cement Express, Inc., 841 F.2d 66, 69 (3d Cir. 1988). We find that Barley's counsel's zealous advocacy on her behalf falls far short of a Rule 11 violation.

One again, Fox Chase submitted a totally redacted billing record to the Court. Even had we found a basis for sanctions, we would have found no basis for their imposition in this latest take-it-on-faith filing. We therefore deny Littler Mendelson's Rule 11 motion.

Finally, we turn to Barley's cross-motion for sanctions pursuant to 28 U.S.C. §1927. As the Advisory Committee Notes to the 1993 amendments explain, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." To impose sanctions under Section 1927, we must find that counsel has (1) multiplied "the proceedings"; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the "proceedings"; and (4) did so in bad faith or by intentional misconduct, which our Court of Appeals has defined

17

as advancing meritless claims that counsel knew or should have known to be meritless, and where the motive for filing the multiple "proceedings" was "for an improper purpose such as harassment."  In Re Prudential, 278 F.3d at 188 (citation omitted).

Littler Mendelson's two motions on Fox Chase's behalf without question offend Section 1927.  It multiplied the proceedings by filing two motions for sanctions that were unsupported by billing records that conformed to our Court of Appeals's longstanding precedents for attorney's fee submissions.  Its Rule 11 motion failed to comply with the plain language of that Rule and was untimely served.  Fox Chase's counsel was unreasonable to file these motions as they fly in the face of well-established Circuit law and could only have been intended to harass the plaintiff. The motions increased the cost of proceedings by obliging Barley's counsel to respond.  And Fox Chase's counsel should have known that the claims they advanced were meritless, being unsupported by evidence in the record and, as to the Rule 11 motion, untimely.  Because the motions were so deficient, we find that they were filed for the improper purpose of harassing the opponent by burdening her with a needless defense.

Accordingly, we will grant Margolis Edelstein's motion by ordering Littler Mendelson to pay Barley's counsel the cost of defending the two motions for fees and sanctions.

An appropriate Order follows.

BY THE COURT:

/S/ STEWART DALZELL, J.
